Roy E. WELLNITZ, Petitioner-Respondent,†

v.

BOARD OF POLICE & FIRE COMMISSIONERS OF
the CITY OF WAUWATOSA, and R.G. Keller, Secretary, Appellants.

Court of Appeals

*No. 88–1400. Submitted on briefs December 6, 1988.—Decided
June 8, 1989.*

(Also reported in 444 N.W.2d 412.)

†Petition to review denied.

For the petitioner-respondent the cause was submitted on the briefs of *Gerald P. Boyle, S.C.,* with *Gerald P. Boyle* of counsel, of Milwaukee.

For the appellants the cause was submitted on the briefs of *Roland J. Steinle, Jr.* and *Gregory Gramling, Jr.,* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. This is an appeal from a judgment of permanent injunction. The injunction restrains the Board of Police and Fire Commissioners of the City of Wauwatosa and its secretary, R.G. Keller, from declaring that Roy E. Wellnitz vacated his office as Wauwatosa chief of police, and prevents the Board from enforcing against Wellnitz its rule requiring that the chief of police live in Wauwatosa.

The facts that underlie this appeal are not disputed. At the time Wellnitz was appointed Wauwatosa chief of

police in 1975, he lived in Wauwatosa. In May of 1977, the Board adopted Rule 7.02 of the Rules and Regulations of the Police and Fire Commission, which permitted the appointment of someone who did not live in Wauwatosa as police chief but required that the person "establish residence within 60 days after appointment." The sixty-day time period was changed to nine months in September of 1977.

On December 14, 1987, Wellnitz moved from Wauwatosa, in Milwaukee County, to the Village of Elm Grove in Waukesha County. Wellnitz told the mayor of Wauwatosa and the Board that he had moved from the city, but explained that his new home in Elm Grove was significantly closer to the police station than was his old home in Wauwatosa. Pointing out that he had thirty-eight years "of police service" with Wauwatosa, including twelve and a half years as chief, Wellnitz requested a waiver of Rule 7.02 until he retired "in the not too distant future." The Board was advised by its attorney that it did not have the power to grant the waiver because, in the attorney's view, Wellnitz had automatically vacated his office as Wauwatosa police chief on December 14, 1987, when he moved out of the city.

Wellnitz filed a petition for a writ of prohibition seeking to restrain the Board from declaring that he had vacated his position on December 14, 1987, and from taking steps to appoint an interim chief. The trial court treated the petition as an application for injunctive relief and, as noted, granted judgment to Wellnitz.

The Board raises two issues. First, whether Wellnitz vacated his position as Wauwatosa chief of police, by virtue of sec. 17.03(4)(c), Stats., when he moved out of the city. Second, assuming that sec. 17.03(4)(c) does not apply to Wellnitz, whether the Board was authorized to promulgate Rule 7.02. Since our determination that sec.

17.03(4)(c), Stats., applies to Wellnitz is dispositive of this appeal, we need not address the validity of Rule 7.02.[1]

██

Section 17.03, Stats., provides, as material here:

**Vacancies, how caused.** Except as otherwise provided, a public office is vacant when:
**(1)** The incumbent dies.
**(2)** The incumbent resigns.
**(3)** The incumbent is removed.
**(4)** The incumbent ceases to be a resident of:

(a) This state; or

. . ..

(c) If the office is local, the county, city, village, town, district or area from which elected or within which the duties of the office are required to be discharged . . ..

Whether this provision resulted in Wellnitz having vacated his office as police chief when he moved out of Wauwatosa is a legal question, which we independently determine. *See Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).[2]

██

It is a paradigm of statutory interpretation that we must "ascertain and give effect to the intent of the legis-

---

[1] The trial court concluded that the Board had no authority to enact Rule 7.02 because the Board's powers were limited to those specified in sec. 62.13(1) through (5), Stats., and the Board did not possess the optional rule-making powers conferred by sec. 62.13(6)(a), Stats., because the prerequisite referendum was never held. *See* sec. 62.13(6)(b), Stats.

[2] Wellnitz concedes in his brief that the Wauwatosa police chief "is an officer of the City of Wauwatosa." *See* sec. 62.09(1), Stats.

lature." *Id.* at 537–538, 345 N.W.2d at 394. "In determining legislative intent, first resort must be to the language of the statute itself. If the meaning of the statute is clear on its face, [we must] not look outside the statute in applying it." *Id.* at 538, 345 N.W.2d at 394.

Section 17.03(4)(c), Stats., is clear. An incumbent of a local public office vacates that office when he or she "ceases to be a resident of . . . the . . . city . . . within which the duties of the office are required to be discharged." In granting the injunction, however, the trial court concluded that this provision does not apply to chiefs of police because sec. 17.12(4), Stats., which governs the "removal" of city officers, provides that "no officer of any city, appointed . . . under and subject to . . . a police and fire commission law, or whose removal is governed by such a law, shall be removed otherwise than as therein provided."[3] We disagree with the trial court's analysis.

---

[3] Chapter 17 also specifies the ways other public officers may be removed from office. Thus, sec. 17.06, Stats., governs the removal of state officers by impeachment or address; sec. 17.07, Stats., governs the removal of legislative and appointive state officers; sec. 17.08, Stats., governs the removal of those appointive state officers who collect, handle, or receive public moneys; sec. 17.09, Stats., governs the removal of elective county officers; sec. 17.10, Stats., governs the removal of appointive county officers; sec. 17.12, Stats., governs the removal of city officers; sec. 17.13, Stats., governs the removal of village, town, town sanitary district, school district, and vocational officers; sec. 17.14, Stats., governs the removal of assessors, and members of boards of review or county boards of supervisors; and sec. 17.15, Stats., governs the removal of certain other officers. As we have seen, sec. 17.12(4), Stats., provides that removal of city officers subject to a police and fire commission law is governed by that law.

"Removal" is but one way a public office becomes vacant. Sec. 17.03(3), Stats. An incumbent's cessation of the required residency is another way a public office becomes vacant. Sec. 17.03(4), Stats. Public offices also become vacant by, for example, death and resignation. Sec. 17.03(1), (2), Stats.

The office of Wauwatosa Chief of Police became vacant when Wellnitz moved from Wauwatosa. *See* 10 Op. Atty. Gen. 660, 661 (1921) (under predecessor to sec. 17.03(4), Stats., "an officer terminates his right to the office when he terminates his residence" in the applicable geographic area). Although we are sympathetic with Wellnitz's plight and, as individuals, we wish that there was a way to avoid the clear statutory mandate in this case, we are bound as a court by the legislature's directive encompassed in the statute's unambiguous language.[4]

*By the Court.*—Judgment reversed.

[4] Wellnitz has not challenged the constitutionality of sec. 17.03(4)(c), Stats. Compare *McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645 (1976), where the court in a brief per curiam decision held that a "bona fide continuing residence requirement" for municipal employment did not violate the right to interstate travel and was not irrational so as to violate the Due Process or Equal Protection clauses of the Fourteenth Amendment to the United States Constitution.